May it please the court. My name is Shane O'Neill. I represent Mr. Chaparro-Luna. After a trial, Mr. Chaparro-Luna was found guilty of importation of marijuana and not guilty of possession with intent to distribute it. That, the jury in that trial was trying to resolve disparate statements by Mr. Chaparro and Agent Talavera. Agent Talavera's statement saying that Mr. Chaparro confessed to carrying a backpack of marijuana into the United States, Mr. Chaparro saying that he did not do that. The jury's ability to make that resolution was hindered by four errors from the district court. The first error I'd like to talk about is the district court's exclusion of Mr. Chaparro's expert who would have testified that the photos taken by the government in its investigation of Mr. Chaparro of shoe prints did not match the photos of Mr. Chaparro's shoes. The government, I mean, the court, the district court excluded this expert because it was untimely noticed to the government. The government produced the photos of the shoe prints taken during the investigation on Monday, July 9th. The defense disclosed the expert who would testify that the shoe prints did not match Mr. Chaparro's shoes on Friday, July 13th. Relevantly, the government had noticed its expert that would testify that the marijuana discovered in the backpacks was marijuana on Wednesday, July 11th, complying with the defense's request for that notice. The district court here erred in determining that the defense's notice of the expert was untimely. That error was harmful because the evidence that Mr. Chaparro's shoe prints did not match his shoes were key in linking Mr. Chaparro to the backpacks of marijuana. One of the government's agents, Agent Chavez, testified that he had identified the shoe prints that the agents were following that led to the marijuana, that he had matched those shoe prints to Mr. Chaparro's shoes when he arrested Mr. Chaparro. The government introduced this evidence to try to link Mr. Chaparro's to the shoe prints. The government's photograph of the shoe prints that they were investigating as part of the investigation and the absence of Mr. Chaparro's shoe matching those shoe prints was significant exculpatory evidence that would have changed the jury's verdict in this case, especially given the closeness of the jury's verdict. The jury did split its verdict after sending a note to the district court judge that they were split after an hour and a half of deliberations, seven for not guilty, five for guilty. So our argument is that this error was significantly harmful to Mr. Chaparro. The government in its brief raises that Mr. Chaparro, that the jury was capable of comparing the photographs to Mr. Chaparro's shoe and that assertion is contradicted by the record. Agent Rocha, who was one of the agents who followed the shoe prints, was shown the photographs taken by the, taken during the investigation and asked whether he could identify or testify that he could not identify the patterning of the shoe prints from the photographs as they were admitted. Because Agent Rocha is trained to identify those shoe prints and could not make the comparison, our argument is that the jury was not able to make that comparison without the aid of the expert. The expert would have aided the jury in two ways. The expert would have testified that he was capable of making this comparison, had done so in other cases and had been admitted as an expert to make the comparison in other cases, had analyzed the photograph of Mr. Chaparro's shoes and the shoe prints and concluded that they were not a match. He also would have aided the expert because he enhanced the photographs taken by the government in Mr. Chaparro's shoes easier to tell. He would have aided the jury in two ways, in those two ways. If there are no questions about that error, I'll move on to the second, the second, the first issue that we raise, the, the district court's error in denying the defendant's motion for foreign depositions. Here the defendant pretrial moved to depose three people in Mexico who were family members of Mr. Chaparro. The forecasted testimony was that they would testify that they loaned Mr. Chaparro the equivalent of $850 in order to travel to the United States to work illegally. He paid that to an, he, they would have testified that he, they loaned him that money to pay to an alien smuggler. The testimony during the trial and that was anticipated, anticipated during the motion for foreign depositions was that a person who pays to be smuggled, a person who pays money to an alien smuggler does not have a motive to carry marijuana because the practice of cartels is to either charge a person, either to charge a person a fee to be smuggled illegally into the United States or to force them to, or to ask them to carry a backpack of marijuana in lieu of a fee to be smuggled. It wouldn't make sense for him to carry a backpack. Answer, that's right. That forecasted testimony bore on Mr. Chaparro's motive to carry a backpack of marijuana. If he loaned the money to the cartel, he would not be expecting to do so. It would not have any reason to do so. The district court adopted the magistrate court's reasoning in the denial of the motion for foreign depositions. The magistrate court specifically reasoned that the forecasted testimony was not material and in its analysis of the lack of materiality, and this is where the error is quite clear, the magistrate court weighed the claim by the government that Mr. Chaparro had confessed to Agent Talavera and said that in light of that confession, this testimony is less material than it otherwise would be. That weighing analysis is shown pretty clearly in Dillman to be part of this court's harmlessness analysis, and it was error for the district court to make a materiality determination based on other evidence that the government would introduce to counter the forecasted testimony that would have been achieved in the foreign depositions. Our argument is that it was not harmless given the closeness of the jury's verdict here, but also the importance of what that led to because Mr. Chaparro was not able to get this testimony, and that was not the intent of being smuggled. He, the only other avenue for him to get it in was to testify himself, and further, it did, because identity was an issue in this case, Mr. Chaparro was denying being the person who carried the backpack of marijuana. Mr. Chaparro was found over a mile away from the marijuana, 7 hours after the agents discovered the marijuana. His lack of a motive when he's challenging his identity as the person who carried the backpack was relevant evidence and would have changed the jury's verdict on the count of whether he had imported marijuana into the United States. If there are no questions on that issue, I'll move to our second issue, the denial of the warrant. July 9th is the relevant date for most of the issues in this case. That was the date on which the government produced the photographs of the shoe print evidence obtained during the investigation, as well as when they produced what I've referred to in the briefs as the Customs and Border Patrol, or CBP, waiver. There were two waivers produced in this investigation of Mr. Chaparro's rights. The first one was a DEA waiver, and the narrative that came with that was that Mr. Chaparro gave a statement to Border Patrol Agent Talavera. After giving that statement, DEA arrived on scene, Mr. Chaparro revoked his rights, and all questioning stopped. The CBP waiver contradicted that narrative. It was not produced until July 9th. In the CBP waiver, there's an addendum attached to it, written at the time of the waiver, it says that Mr. Chaparro is invoking his, having invoked his rights to the DEA, now wishes to answer questions from the Border Patrol. It does not mention any intervening act by Mr. Chaparro that would have reinitiated the interrogation. The disclosure of that brought, was the first time that the defense was on notice that they had the ability to suppress. Because of that, the defense filed what it initially titled a motion in limine on July, I believe six days later, on July 3rd, July 15th. That motion in limine sought to, sought to exclude any involuntary or statements made by Mr. Chaparro to the    DEA or any statements made in violation of Miranda. In the pre-trial conference, defense counsel elaborated on the basis for that motion with the district court. The district, the district court ruled that that was, in effect, a motion to suppress. The district court, the defense agreed with the district court's characterization, but argued that the motion to suppress was not untimely for two reasons. First, because after a defense motion to continue the motion's deadline, the district court set a new trial date, but not a new motion's deadline, while granting the motion to continue. The defense's interpretation of that, and the only really reasonable reading, is that it mooted the motion's deadline. When a motion's deadline does not exist, the deadline is pre-trial. Thus, the filed motion, as well as defense counsel's proffer of the reasoning for it in the pre-trial hearing, were timely. Even if that weren't the case, a motion to suppress can be heard even at filed after a deadline if there's good cause. Defense counsel urged to the district court that the good cause was the July 9th production of the narrative. This was obviously harmful to Mr. Chaparro, as it could have led to the exclusion of Agent Talavera's testimony about his statements, and that was the primary evidence that Mr. Chaparro was convicted upon. In summary, I'd urge the Court that these three errors were particularly harmful to Mr. Chaparro, because all of the physical evidence supported his account of what happened to him, as opposed to the agent's account of the statements that he gave upon arrest. There were photographs of his back and front. There was testimony that backpackers have marks when they carry backpacks for multiple days across a desert, indicative of having carried those backpacks. The markings were not present on his body. He testified to that. And the shoe prints that were taken in the course of the investigation when finding the marijuana did not link to his shoes. If there aren't any questions on those issues, I'll pass the lectern to the government. Thank you, Your Honor. May it please the Court. The expert testimony about the photographs is not key evidence at all. The three photographs were found in the investigation file. They were not used by the prosecution. They were introduced by the defense. There are two photographs of foot sign, defense eight and defense nine. And there's one photograph of the bottom of the defendant's shoe. That's defendant's exhibit one. On pages 409 to 410, when the Court is reconsidering the expert, allowing the expert, there is no information or testimony as to who took the photographs or where they were taken or who made the foot sign. At that hearing on 401 and 404, the district court doubted that the pattern comparison was exculpatory because of all the people that came through that pasture. There's no evidence that the photographs were anywhere near the marijuana or had any connection with the case other than the fact that they were in the file. In the closing argument, the prosecutor said, discounted the photographs, said that they weren't relevant, anticipated that the defense counsel would make a point of this. The defense counsel did argue to the jury that the shoe prints were horizontal lines and the defendant's shoes had diagonal lines running vertically, and the jury was encouraged to compare and did compare the patterns themselves. In fact, at that hearing, defense counsel said on page 403 that it can be seen that the unenhanced photographs that were admitted didn't match his shoe prints. So the essence, the essence of the lack of prejudice is that the photographs and the expert testimony were of nothing relevant, but nevertheless, the jury could conclude that the admitted photographs didn't have congruent patterns. And on the court reconsidered the ruling on pages 394 to 410, and on 408, they keep talking about it, going back and forth about it, and the court says, okay, the expert can testify. That's at 408. But what happened after that was then it was proposed that the expert would talk about not just whether the patterns matched, but he would talk about the government's procedures for taking and preserving evidence, and then at that point the prosecutor objected, and then the court excluded them again. That's all at 408, 409. So the defense could have had what it initially wanted, that the patterns didn't match. And I think that moots the timeliness issue. And second, the court offered a continuance. That's on page 370. After the first day of trial, he said, look at all the — because of all these late filings, late motions, do you want a continuance? And the defense declined. But then the defense put on the record saying, yes, I declined, but it's because the court indicated that it wouldn't change its rulings. But in this case, the court did revisit the issue. So they should have taken the continuance. They should have had the extra time to prepare the report and expand on whether it was relevant or not. So for all those reasons, the exclusion of the expert was harmless error. As to the — as to the foreign depositions, the evidence from the proposed depositions was from his mother, his brother, and his sister. And any knowledge about his plans is at best what he told them before he left. It's in the nature of negative evidence and self-serving evidence. If you don't tell your mother that you plan to smuggle drugs, does that have any value? I don't think it does. They didn't have any knowledge of his intent or motive at the time he was at the border. The only way it could be marginally relevant is as far as the act of giving him money. That could be marginally relevant. But the test is materiality, and whether his relatives saying they gave him money, is that significant, important, or consequential, or critical to the case? And here it's entirely cumulative of his own testimony. And the rule in Dillman is that the limited scope and cumulative nature of the proposed testimony goes to harmless error. And here it was harmless error. It's nothing like the Farfran-Carrion case, where the deposition that was excluded was the person who provided the defendant with the loaded vehicle. Here the relatives have no knowledge of the backpacks. And then the confession, boiling down the confession, there's a proffer at the pretrial hearing. And the proffer at the pretrial hearing is, defendant comes in, waives his rights, confesses. Then the DEA agents come, and he says, I don't want to speak to them. And then he indicates, and there's testimony saying, I want to talk some more. I want to talk to Agent Talavera, the Border Patrol agent, some more. So an addendum is written. The addendum says, I agree to speak with Border Patrol in reference to my apprehension and event. I understand that even though I invoke my right to request an attorney present with DEA, I agree to speak with Border Patrol without the presence of the lawyer. And so the testimony at the trial was exactly the same as to the sequence. The attack on the sequence is that the first waiver of rights doesn't have a time on it. The DEA waiver of rights has a time on it. And so, and the addendum does not have a time on it. So that's the attack. And the attack also is that the addendum didn't refer, didn't say, yes, I had previously talked to the agent. After I had given my rights. So it does not have that in there. But even if there, if the hearing is inadequate, or even if there's no hearing, if there's subsequent evidence that, as to the issue of voluntariness, that the confession was voluntary, then it didn't matter about any defects in the hearing. And here, this was rehashed at the motion for a new trial. There was a hearing on it. And the criticism of the motion for a new trial is that the court didn't specifically address that sequence. But the court said, I heard the testimony of the agents. It was entirely cross-examined. And I find it to be voluntary. So that subsequent decision as to voluntariness makes any error preliminarily harmless. I don't have anything else, Your Honor. Thank you. All right, counsel. To clarify on the issue of the expert testimony, the defense did re-urge the expert after the, or just before, I believe, the government rested. The court did take that up on page 408. Importantly, after a brief discussion in which the court seemed to imply that the expert may be able to testify, defense counsel asked, so I will be able to call the expert. The court ruled, well, I don't know. What else can the expert testify to? The defense counsel then gave a longer testimony beyond that was not disclosed. The defense counsel did explain that after a conversation with the lawyer for the government the Friday before trial, which also post-dated the disclosure, the defense counsel supplemented its disclosure on the Tuesday before trial, which was a Wednesday. Given that it was based on further information about what the government had said its agents would testify to about the shoe prints, the government initially taking the position that it planned to have its agents testify about the shoe prints and where the shoe prints were taken in the investigation, the defense's supplement to its disclosure in response to that was appropriate and was not untimely. I will just briefly re-urge that the government also argues that the appropriate method for the defense here would have been to accept a continuance, but the defense, the government, the court did offer to continue the case in an off-the-record conversation that was then put on the record by defense counsel during the questioning about a continuance. As the government accurately points out, the defense counsel represents that it did not take a continuance because the court had indicated that the continuance would not change its rulings on any of the matters that have been raised in the pretrial conference, namely, the exclusion of the expert and the denial of the motion to suppress is untimely. Therefore, a continuance would not have cured either of these errors. There was no reason for the defense counsel to ask for or accept that. Moving on to the foreign depositions issue, the government argues that the testimony was self-serving, that you don't tell your mother that you're about to smuggle drugs, but the fact of the loan goes to Mr. Chaparro's motive to smuggle or not to smuggle drugs. It's not about this is what I told my mom, it must be true. It's about I borrowed $850 million from my family, money that they had to scrape together. And the only reason to do that is to pay to an alien smuggler. The only reason to pay an alien smuggler, according to Agent Talavera's testimony, is because that means you don't have to carry drugs. It does show his knowledge before arriving at the border, but importantly, it shows his knowledge at the first moment that he was associated with the person who ended up taking him across. The person who took him across, Mr. Chaparro testified, picked him up at his home in Chihuahua a day before he crossed the border, and that was when he had paid that person the money that he had borrowed from his family. And there's no reason in the record to believe that his motive would change from the time that he paid the alien smuggler to his arrival at the border. The government argues that it is cumulative of his own testimony. As previously argued, when the motion for foreign depositions was decided, it was not known whether Mr. Chaparro would testify. It was appropriate at that time to assume that he wouldn't testify. But even if it was cumulative of his own testimony, in United States v. Khan that we cite, there was a question as to whether deposing five witnesses was needlessly cumulative or appropriately corroborative, and the district court deciding that case reserved that question. Here it wouldn't have been needlessly cumulative, even assuming that Mr. Chaparro testifies, because it would add one additional person corroborating that to his account. This isn't, you know, we weren't proposing to depose ten different people on this issue. Finally, on the confession, the district court's conclusory statement in the motion for new trial that the statement was voluntary is not enough to cure the error. The district court did not make the necessary findings of fact to show that the statement complied with Miranda and didn't resolve the factual disputes about which Mr. Chaparro was entitled to a hearing. Thank you. Thank you both for your explanations this morning.